## J. R. ANDERSON AND WIFE v. W. L. HORN.

### No. 2804.

1. **Parol Sale of Land — Payment — Occupancy — Improvements.**—Father and son bought a tract of land on credit. By parol agreement the son paid the purchase money. The land bought was exchanged for other lands upon same survey. The son occupied the land so obtained for fifteen years, making valuable improvements thereon. The title acquired by the purchase failing, the superior title was obtained, and the certificate floated and relocated by the purchasers of the land originally covered by it. The son sold the proportional part of the certificate represented by the land so purchased, the vendee being assured by the father that it was owned by the son. The father during his life recognized his son's claim to the land, the certificate, etc. The mother having died, the father partitioned the community property, giving her heirs more than her share in the community. The father died. In suit by the purchaser of the floated certificate against the heirs, *held:*

   1. That the parol contract between father and son, with payment, possession, and valuable improvements made, was taken out of the operation of the statute of frauds.

   2. It seems the heirs were estopped to claim the land sued for as against the plaintiff holding under the son.

2. **Conclusions of Law and Fact.**—The failure of the district judge to file his conclusions of fact and of law within the time from judgment and the filing of a motion for new trial, is no ground for reversal, although such request was made. Conclusions, etc., were however filed during the term.

APPEAL from Freestone. Tried below before Hon. Rufus Hardy.

The opinion states the case.

*Bell, Bell & Bell,* for appellants.— 1. When a purchase is made on the credit of two and the purchase money is paid by one only, there will be no resulting trust. Sugd. on Vend., p. 700; Glasscock v. Glasscock, 17 Texas, 480; Brooks v. Fowle, 14 N. H., 248.

2. Where two agree to buy land and the title is taken in the name of

both, but one pays the entire purchase money, no trust will result in his favor.    Bisph. Eq., sec. 81; Glasscock v. Glasscock, 17 Texas, 480; Parker v. Cook, 60 Texas, 112; Cunio v. Burland, 1 Posey's U. C., 469; Lacy v. Clements, 36 Texas, 661.

3.    The burden of proof to establish a trust is upon the party asserting its existence, and to establish it by parol the evidence must be full, clear, and convincing.    Bisph. Eq., sec. 83; Markham v. Caruthers, 47 Texas, 21; Cuney v. Dupree, 21 Texas, 219; Miller v. Thatcher, 9 Texas, 484; Baker v. Vining, 30 Me., 127; Olcott v. Bynum, 17 Wall., 44.

4.    The court erred in finding that the defendants were estopped to claim the land in question as heirs of Alex. and Elizabeth Lee, because of their acquiescence in the claim and possession of J. B. Lee.

No brief for appellee has reached the Reporter.    ·

STAYTON, Chief Justice.—It appears from the findings of fact that in 1866 J. B. and Alexander Lee, son and father, purchased on a credit a part of the Sparks headright survey, situated in Freestone County, and that after the purchase the father, Alex. Lee, agreed that his son should have the land if he would pay the purchase money, which he did, and that soon after this occurred J. B. Lee exchanged that tract of land for another on the same survey, for which, however, no deed was made until 1874.    Whether the deed then made was to the father and son or to the latter only, the court did not find, but the inference from the evidence is that it was made to the son, and that they joined in the deed to the land given in exchange.

The court further found that after the exchange of lands was made J. B. Lee settled on the land received in exchange, and thereon made permanent and valuable improvements, and occupied it as his own continuously for fifteen or sixteen years, paying all taxes until 1884.    The Sparks survey was in conflict with an older valid grant, and litigation arose in reference thereto, which in some way was compromised, whereupon J. B. Lee and other persons who were claiming the different parts of the Sparks survey floated the certificate and located it on the land in controversy, which is situated in Floyd County.

That part of the Sparks survey originally purchased by J. B. and Alex. Lee seems to have embraced five hundred or six hundred acres of land, and at the time they purchased the wife of Alex. Lee was living, and so continued until after the certificate was floated and located on the land in controversy, which consists of 374 acres, an undivided interest in the Sparks survey as relocated.

Alex. Lee died on February 7, 1885, and the court found that up to the time of his death he recognized the right of this son to the land in controversy, as well as his right to all of the Sparks survey situated in Free-

stone County which had been purchased by the two, and repeatedly attempted to make deed to him, and always expressed his willingness and desire to do so.

The wife of Alex. Lee died in 1878, and the court found that he after her death made a division of the community property and conveyed to each of his children more than they were entitled to as heirs of their mother.

In this partition all the children seem to have participated personally or by representation, and to have received the property allotted to them.

Appellee claims the land in controversy through a conveyance from J. B. Lee, and the court found that before his purchase, which was for valuable consideration, Alex. Lee informed him that the land in controversy belonged entirely to J. B. Lee.

Alex. Lee had three children, all of whom were made defendants to this suit brought by appellee to establish his right to the land.

J. B. Lee admitted his right, but Mrs. Anderson and her husband, who had acquired the interest of the other child, asserted title to an interest in the land.

The court below found that the verbal agreement between Alex. Lee and his son, with the making of the improvements and long occupation, vested title in the latter to that part of the Sparks survey in Freestone County obtained by J. B. Lee in exhange for that originally bought by father and son.

Under the past decisions of this court this ruling seems correct, and no question is here made as to the correctness of the conclusion of fact on which the ruling is based.

We see no reason why the same rule, as between Alex. Lee and his son, should not be applied that would be had the valuable improvements been made on the land purchased by them in the first instance, instead of the land received in exchange.

All the right claimed by appellants seems to be based on the purchase originally made by the father and son; and if it be true that the land first purchased by them by virtue of the transactions between them did not equitably vest entirely in the son, then, unless the father parted with his interest therein when the exchange was made by joining in the deed, his heirs may have an interest in the land in Floyd County yet; but this would not defeat the right of appellee to recover the undivided interest for which he sues. The inference from the evidence is that the father did join in the deed. If he did not, the persons with whom J. B. Lee made the exchange might have ground to complain of failure of consideration in part for their conveyance, which if made to J. B. Lee alone would, however, vest such title in him as his vendors had.

The court further found that the transactions between the father and son were such as to pass title to the latter to the certificate when floated

from the land in Freestone County, that being susceptible of transfer by verbal agreement, and this seems to be true.

All these matters occurred during the life of the mother of Mrs. Anderson, and what bound her father bound her mother, and what bound both binds her and coheirs.

Appellants present the case as though the court had held that the fact of payment by J. B. Lee of all the purchase money for the land bought by himself and father, under an agreement made between them after the purchase, would create a resulting trust in favor of J. B. Lee; but that was not the ground on which the case was decided, and it becomes unnecessary to consider the assignments of error further which controvert the existence of such a trust.

The pleadings of appellee may have been faulty, and it is urged that the court erred in overruling appellants' special exceptions; but it does not appear from the record that they were called to the attention of the court or that any ruling was had on them.

It is urged that the court erred in permitting the introduction of partition deeds between Alex. Lee and his children to show that each child had received its full share of the community estate inherited from the mother; but the record does not show that any objection was made to the evidence when offered, and it can not be made here.

The court seems to have held that appellants were estopped by the declarations made by their father to appellee from claiming through inheritance from him.

It is not now necessary to determine whether all the facts existed necessary to create such an estoppel. If not, the facts brought the case to the very verge of estoppel. Mayer v. Ramsey, 46 Texas, 375.

The sixth and seventh assignments are as follows: "The court erred in rendering judgment for plaintiff under the law and evidence in the case." "The court erred in overruling defendant's motion for a new trial." The motion embraced many grounds, and under the well settled rules of this court it must be held that these assignments are not sufficiently specific to require or authorize their consideration.

There is no complaint that the findings of fact were not in accordance with the evidence, and there is but one bill of exceptions found in the record, which relates to the only remaining assignment of error.

It appears that the judgment was rendered on September 18; motion for a new trial was filed on September 21, and an amended motion on the 27th of the same month.

It appears from the bill of exceptions that on the day the judgment was rendered appellant requested the judge to file within two days conclusions of fact and law, in order that a motion for new trial might be based thereon, which the court then declined to do, having orally stated the findings at the time of rendering judgment. The court, however, during

the term did file findings of facts and law. Counsel would doubtless prefer to have findings filed within time required for filing motions for new trials, as the rulings of facts and law could then be definitely known, but we know of no statute or rule which requires a judge to do this, and to require it would often interfere with the orderly progress of the business of a court.

We find no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered January 28, 1890.